IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD F. BLIZZARD, Sr.             :
    Petitioner-pro se
                                  Case No._____

vs.                                 :

DAVID L. WINN, et all,              :
Warden, Federal Medical Center
Ayers, Massachusetts,
    Respondent.                     :


## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

And Now, appearing before this Honorable Court is Donald F. Blizzard, Sr., currently at Bench in pro se. Petitioner avers that below and ungiving factual information to support this request for Injunctive Relief.

## JURISDICTION

The Court is vested with exclusive jurisdiction as found in Title 18, United States Code (USC) Section 3626(i)(2) and (B)(ii) & (iii).

        OPEN MATTERS BEFORE THE U.S. DISTRICT COURT
        FOR THE DISTRICT OF MASSACHUSETTS AND THE
        SOUTHERN DISTRICT OF NEW YORK

A.  Tillman, Smith, Blizzard, v. Johnson Diversay Inc., et al, Civ. No. 4:04-cv-4107-GOA (D. MASS);

B.  <u>Hapcig, Looper, Dunlap v. Vandewqziet Convention Center et al</u>, (S.D.N.Y.);

C.  <u>Hapcig, Cooper, Dunlap v. New York State Police, et al</u>, (S.D.N.Y.);

D.  Donald Blizzard as a Friend of the Court on behalf of <u>Tom Rikaumar</u>, (to be docketed) (D. Mass).

### Definitions of Words and Phrases

A.  "<u>Book Room</u>"

   This defines the small room where the Law material is retained and distributed to inmates upon a hand written request for each item requested, three book limit (a copy of a "request slip" is attached hereto)

B.  "<u>Typing Room</u>"

   This defines a very small area of Library tables that houses 11 typewriters for Eleven Hundred (1,100) inmates or ½ of 1% of the inmates housed at FMC Devens. At this writing, there are only 9 typewriters.

C.  "<u>Reading Room</u>"

   This refers to a very small area. (Exact measurements incorporated herein). This area is for legal research and leisure reading. This area provides Eleven seats for a like number of inmates to either read common books, study, or do legal research, write motions, etc. With total count being over Eleven Hundred inmates this week, this space provides less than 1% of inmates access to legal research and court access.

D.  "<u>Inmate Counter</u>"

   This is an area of the library whereupon several inmate Education employees gather(one or two working) and in direct contridiction to BOP Policy (28 USC CFR) play loud radios, sing, yell, and use counter tops to simulate drum beats.

E.  "C.D. Players"

   These are BOP provided listening instruments intended
   to be used with headphones by inmates and in a quiet
   manner. The aforementioned are incorporated into the
   "Reading Room" at which time inmates, while listening
   to CDs, sing loudly and keep beat by banging on the
   tables whereupon the instruments are placed.

F.  "The Televisions"

   The voluminous amount of Thirteen 11" video capable
   televisions are also incorporated in the small "reading
   room." The televisions provide access for inmates to
   view BOP approved movies. Many of the movies are of
   comical entertainment thus laughing, yelling, leg slapping,
   etc., are found, all of which interferes with the quiet
   signs (posted in two languages) necessary for Reading,
   Research and Motion preparation.

G.  "Staff"

   This defines a BOP employee, who, by virtue of their
   employment, are to maintain order, quiet, and the proper
   deployment of Legal materials to requesting inmates.

## Measurements of Library

How Measured

   The measurements were not done by a standard tool, i.e.,
   a "tape measure". This is strictly prohibited to inmates.
   Additionally, staff will not serve to assist in the
   preparation of the motion. Quite simply, the included
   measurements were gained by counting the floor tiles of which
   each tile dictates one (1) foot square. Then, by simple
   mathamatics, the areas were correctly compliled and offered
   herein. (Plaintiff too has included a Floor plan of the
   area complained of).

3

Regarding B & C

Petitioner Donald F. Blizzard represents in pro se over sixty (60) members of a Social Organization of which he is a member. Petitioner is the sole person who brought the Civil Action at law and the person who provides all responses to the Court.

Donald Blizzard is not a litigant in this matter, nor is he licensed to practice law before the respective Courts, nor does he evidence legal advice and opinions.

### Reasons Relied Upon For Relief

1. Donald Bilzzard ia an aged and frail inmate residing at the Federal Medical Center (FMC) Devens, a Bureau of Prisons (BOP) facility located in Ayer, Massachusetts, within the Jurisdiction of this Court. He is, due to injuries and is confined to a wheelchair.

2. As a threshold requirement to do legal research, Petitioner, and a volume of other similarly situated inmates (confined to wheelchairs, walkers (with wheels), canes and crutches) must first pass through the front door of the Educational Building, of which is in contravention to the Americans With Disabilities Act (ADA) which clearly provides for "not more than five (5) pounds (foot pounds) of pressure upon the door. See ADA Chap. A4.13.11. In addition, the width of the door must be at least 30" to 32". See ADA Chapter 1, A4, 13, 10.

After the door is opened, hopefully by a person capable of standing and accorded the physical strength to open the door, I must then enter (or in the alternative, exit) the "Sill Plate"

being a larger piece of squared metal mounted to the entry foundation and ajoining the bottom of the <u>door is extremely dangerous</u> (emphasis added) in that; (1) the height of the metal plate and the squared configeration prevents the wheels of wheel chairs and mechanical walkers access; (2) to overcome this violative obstruction, <u>See</u> ADA, 28 CFR, Cahp. 1, the chair must be thrust forward in a most immediate fashion. If the wheels, with this thrust do not prevail the entry, the inmate here, Petitioner, is thrown forward causing a spill, or near spill, in concert to a vile convulsion of the upper Body, Head, Neck, Shoulder and Vertabrea.[1]

3. After entry is gained (several occasions when Petitioner was frustrated with entry difficulties, wheels syuck on sill Plate, bleeding knuckles, etc., he returned to his housing Unit, thus being denied meaningful access to the courts), a disabled person will look for handicap seating. There is none to be had, and the "reading room" consists of 3 CD receivers, 11 televisions, and three common tables of which will seat a total of Eleven (11) inmates. This "space" is devoid of consideration to open several research manuals, spread papers or files. The <u>only</u> (emphasis added) seat available to Petitioner is (<u>see</u> attached diagram) at the "T" table, the front most table where only one (1) inmate in a wheelchair or "seat walker" can be accommadated, <u>i.e.</u>, one's

---

[1] Petitioner by these acts has never been thrown from the chair, only nearly so. However, he has suffered brusises, headaches, and "skinned knuckles" as a result of entry and exit attempts. Other inmates have clearly fallen from chairs.

legs fit under the table.[2]

While the defendant may correctly argue that Petitioner can "fit under" any side of the three tables, it will equally become correct that if he does so, he must move several times an hour with those in wheelchairs seeking accross to CD receivers and television video receivers in the side and of the "reading room." Many un-needed arguments, threats, and general ill feelings have been voiced and physically exhibited due to this, a very dangerous, violent circumstance.

4. If Petitioner would become fortunate enough to gain seating[3] he would then be required to file a request to the inmate worker in the book room. The norm was that the door to the book room was to be left open so that a wheelchair could "roll up" to the entry door, provide the request slip, and be provided the research material. With Petitioner and other inmates filing unanswered and ignored Request For Relief (Administrative Remedys), the request for relief contained herein a "new norm" is now placed to frustrate the "complaiers" (those in wheelchairs and walkers who canot stand). Noe petitioner is required to stand in line, pass my request through a window, wait, then being provided the requested legal material. When this avenue of retaliation is provided your Petitioner forgoes his access and returns to his housing Unit.

---

2. In May, 2004 (medical report on file), I was seated at a table that wouldn't allow mt legs underneath. A Spanish inmate who was refusing dialysis became unconscious and passed out, and landed upon my casted and pinned right leg.
3. In order to gain a seat, the one(1) seat to accomodate Petitioner, he must leave his Unit one half hour prior to opening of the Educational building and "get in line". This too entails outside in all the elements.

These acts of effecting barriers that impedes a petitioners access to the courts are unlawfully and in direct contridiction to the Sixth Amendment. See <u>Kensu v. Haigh</u>, 87 F.3d 172 ( 6th Cir. 1996): <u>see also</u> <u>Johnson v. Avery</u>, 393 U.S. 483, 21 L.Ed. 2d, 89 S.Ct. 747 (1969). It too is criminally unlawful to retaliate against a person, as instantly, who has brought a violation of the ADA to the named defendant, or against thereof. See ADA, 28 CFR, Chapter 1, 3, 5, 134 "Retaliation or Coersion" (Criminal Penalties).

5. Now, being seated in this Area of 4' x 16', Petitioner, due to lack of space, will have one (1) person seated to his extreme left; one person at the left point of the table, one to his extreme right, and also one (1) at the right point, for a total of five (5) persons in wheelchairs or seated walkers. The othet two length placed tables are also in similar disray. While, as aforementioned, Eleven persons may be seated, however, as here not with over three (3) research manuals (F.2ds, F.3ds, Fed. Supps, L.Ed.2ds, loose leaf authorities, etc).

To present an accurate presentation of what now must be overcome to even hear your associate you are researching with, and seated 18-24 inches from you, Petitioner refers the court to the attached floor plan and provided measurements. With the 3 CD instruments, and 11 television Video players only less than 70 inches from those researching (except from the most frontal seated position at the "T" table), the noise becomes unbearable, and since February

19, 2004, has forced Petitioner to leave the law library thirty-seven (37) times[4] thus severely limiting his access to the court.

The aforedescribed (see Floor Plan) Entertainment Stations which provide for one seat each are too overcrowded. The normal would be for at least two (2) persons to be at a CD station, yelling, doing sing alongs, clapping hands, banging on tables to simulate drums, standing with hands above their heads, doing circular dancing while singing, striking wheelchairs, walkers, and causing a general interruption of study and research, thus Court access. The video enjoyed also have at least two at each station, however, they are quieter than their counter parts at the CD station. The laughing, yelling, etc., is far limited.[5]

The intervention of this noise is totally (emphasis added) ignored by Staff and prohibitive pursuant to the proscription of the Eighth Amendment's "cruel and unusual: punishment clause. See Rhem v. Malcolum, 351 F.Supp. 594 (D.C. N.Y. 1974).

G. In an attempt to circumvent the level of noise and "shoulder to s¢houlder" overcrowding, Petitioner altered his attendance schedule to the law library from 12:30 p.m. (to 2:30 p.m.) and 5:30 p.m. (to 7 p.m.) to 8 a.m. to 10:30 a.m. The thinking was that with inmates working during the daytime hours, he would be able,

---

4. I would respectfully ask the Court to be mindful that if Petitioner argues that a multitude of inmates regularly exit the law library or don't attend at all, due to no space and extreme noise, he, when a copy is served upon Respondent, could be subjected to discipline action of a "group demonstration," a "catch-all."

5. Currently video lovers have discovered video No. 179 which reveals full nudity, in direct contridiction to BOP policy. With this video there is now a vastly increased number of inmates loudly enjoying this video.

8

perhaps, to find it less crowded and quieter. The "reading room" was discovered to not being overcrowded, however, there were now "inmate meetings" taking place with the usual talk overs, "i.e.," "the one who talks the loudest controls the conversation." There were three (3) such meetings taking place during the second week of August, 2004, all ininterrupted by Staff. Again, Petitioner removed from the law library.[6]

7. <u>The Typing Room</u>

The typing room measures 5' x 13'. It provides eight (8) antiguated electric typewriters, and four (4 sometimes) very old Manual typewriters.

Expert testimony can be offered that will clearly demonstrate that (1) the electric machines are not designed for sixteen hours (16) per day use by untrained multiple users; and (2) simply put, the machines for the most part are worn out and not serviced or maintained properly.[7]

To use an electric typewriter, the Petitioner has to join a long waiting line to receive a "typing wheel". This is the circular device of metal that contains the alphabet which must be installed in the machine. Petitioner then must purchase a Ribbon and Correction ribbon from FMC Devens to "use" the machine. The

---

6. An Administrative Complaint, BP 8 was brought on August 10, 2004 seeking relief from those conditions, "meetings," "singers," "screamers," etc. An answered entered on August 15, 2004 by John D. Colautti, Unit Manager, provided no relief. (Copy attached hereto).

7. Petitioner provides a wealth of <u>pro se</u> motions for indigent non-English speaking inmates at no cost to them. As of late, the typing form has reached such a level of non-professionalism that he sends his notes out to be reduced to Motions on the Word Perfect Program then returned to him. A very costly procedure.

9

Ribbon sells for $10.25 and the correction ribbon sells for $8.25. (The same Ribbon (after mark-up) is available at FCI McKean for less than four dollars ($4) and less when purchased through the Government Service catalog. Ribbons are BOP provided for the manual machines, however, they are replaced rarely.

While typing paper is not available via the prison commissary, it and envelopes for mailing are provided in the "book room." In preparing this Motion, August 16 to August 20, 2004, there is no typing paper available to inmates nor are there 10" x 12" envelopes. When Staff persons are asked "when will they become available?", the rudely provided reply is "we're out" and "we do too much for you people."

The majority of the electric machines are worn to the point of the Ribbon being vibrated in an up and down move causing inaccurate placement of the keys to the paper. There is now a "rush" to get in line to be provided typing wheels for machines. Typewriters one (1) and seven (7) are two that even minimily provide somewhat evenly lined typing. New electric machines have not been bought in years. Yet FMC just bought new trucks to drive around in circles.

With then typing room now only providing eleven inmates (9 as of this writing) with typewriters, 4 of which are manual machines of no significance and only two (2) electric typewriters that properly transcribe with 6 others barely working, none of which provide memory, have effectively prevented Petitioner from preparing

Legal Documents in that (1) he must wait in line for the wheel; (2) the electrics permit inadequate type and (3) if Petitioner foregoes the one seat available to him to obtain a "wheel" for later, he loses his seat.

Then aforementioned eleven typewriters cannot and do not accomadate the over Eleven Hundred (1,100) inmates of FMC Devens who are routinely turned away when trying to gain access to a typewriter for the preparation of legal documents. See Avery, supra, Petrick v. Maynard, 11 F.3d 991 (10th Cir 1993); Conner v. Sakai, 994 F.2d 1408 (9th Cir. 1993); in accord with Wolf v. McDonnell, 418 U.S. 539, 41 L.Ed.2d 935, 95 S.Ct. 2963 (1971) and Bounds v. Smith, 430 U.S. 817, 52 L.Ed.2d 72, 97 S.Ct. 1491 (1977).

8. The Inmate Counter

This (please see Floor Plan) is the small area behind where Petitioner is seated at his "T" location. There are usually three inmate employees assigned to work this location. They're instructed to provide Video's, CDs, newspapers, magazines, sign people up for future television viewing, sign out leisure books, etc. This is not the case. The area usually is occupied by Five to Six inmates whp, in direct contrivention to BOP Policy and posted signs demanding quiet, play on a CD transmitting device loud rap music at an extremely loud volume. The inmates too, yell to other rappers in the reading room projecting their renewed satisfaction of the most current rap songs and discussions. All this, permitted by Staff.

### 9. Threats of Staff when Assisting Other Inmates

Petitioner, in February of 2004 was summoned to "R&D" (Receiving and Discharge) to pick up his personal property which arrived from FCI Elkton, the designated pre-injury facility.

The Corrections Officer, for no apparent reasons of security, went through all of Petitioner's filed legal papers. He became enraged when he found documents in Petitioner's possession displaying names other than Petitioners and threatened to lock-up the Petitioner. He asked Petitioner "Has the Warden given you permission to help this person?" He then tookm a wealth of legal documents and threw then in the trash.

These threats of locking-up the Petitioner for assisting inmates quickly faded with the decision of Avery supra, where both of the officers pronounced concerns were reviewed. First, if permission is required to assist inmates in the filing of "legal papers," Avery, supra, and Newell v. Sauser, 64 F.3d 1416 (9th Cir. 1995) when to found "reasonable prison officer would have known that seizing computer-generated legal papers prepared on behalf of another immate from prisoner's cell was unlawful, so that prison officials were not entitled to qualified immunity, thus can be prosecuted.

The taking, without authority of irreplacible legal documents coupled with a non-friendly attitude towards medically challenged inmates is styled to severely hamper Petitioner's court access resulting in non and delayed filings. As stated ante, the "reading rooms" do not properly provide for the vast amount of wheelchairs

12

and seated walkers who attempt to use the library. See ADA, Chapter 1, CFR, A4.2.3, "Wheelchair turning Space". These guidelines specify a minimum space of 60 inches (1525 mm) diameter or a 60 in. by 60 in. (1525 mm by 1525 mm) T-shaped space for a pivoting 180 degree turn of a wheelchair. See also A4.2.1 CFR, supra, "Wheelchair Passage Width" space requirement for wheelchairs in passage require a 30 inch (760 mm) clear opening width for doorways. There too is required, as here, i.e., "Heavy Traffic Areas" "a greater clearance is required" "32 in x (815 mm) will provide adequate clearance." Also, as pre-stated, the entry doors are "almost" impossible for petitioner to open. See 28 CFR Chapter 1, A4.13.11 "Door Opening Force."

The ADA A4.13.11 clearly demonstrates that "although most people with disabilities can expect at least 5lbf (22.2n), both pushing and pulling from a stationary position, a few people with severe disabilities cannot exert 3lbj (13.13n).

The doors complained of herein far exceed the stipulations of A4.13.11, supra. A strong healthy individual finds quite an effort be required to o-pen the complained of door.

If the measurement provided by your Petitioner, see attached floor plan, were mathamaticaly corolated with the established space requirement for stationary and turning wheelchairs, ADA Chapter 1, CFR A4.2.3 and A4.2.1, it will clearly found that; (1) no wheel chairs could properly be used in the "Reading Room." Even with the measurements provided, the four (4) foot (in width)

tables to the left, right, and front of the three (3) reading tables devoid this room of the four feet which is provided for the CD players and televisions; and (2) the typing rooms measurements will only provide space for one (1) wheelchair. There is no room, as per required. 28 CFR Chap 1 A4. 2.1 for passage.

With FMC Devens being a Medical Center, a majority of inmates, like the Petitioner, are reduced to mechanical modes of movement, and now are prevented access to the Courts due to the primitive "Reading Room" only allowing Eleven (11) healthy inmates access and the "Typing Room" equally, Eleven (11) persons to type (presently as of this writing, only 9 allowed to type).

These acts and omissions committed by the named Defendant has denied Petitioner of his Sixth Amendment Rights to meaningful access to the federal courts. See Bounds v. Smith, 430 U.S. 817, 52 L.Ed.2d 72, 97 S.Ct. 1491.

At Devens, even the findings of the U.S. Supreme Court, which 35 years ago struck down a regulation prohibiting prisoners from assisting each other with legal work, see Johnson v. Avery, 393 U.S. 483, 21 L.Ed.2d 718, 89 S.Ct. 747 (1969), are not adheared to . In Ross v. Moffitt, 417 U.S. at 616, 41 L.Ed.2d, 341, 94 S.Ct. 2437, it was found that "meaningful access" to the Courts are the touchstone to the Sixth Amendment. Here, at Devens this becomes the graveyard.

Petitioner also presents that although he is not held to the stringent standards required by counsel, Haynes v. Kerner,

404 U.S. 519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972), in the bringing of colorable claims before the Courts, he still must preform prelimimary research. The research is essential to prevent the bringing of frivolous claims and to meet the procedural prerequisets found in both Statutes and Court Rules, and required by this Court.

### RECOVERY PLAN

With the Petitioner presenting this Motion before the Court he shall seek relief by the least intrusive means that can be narrowly drawn to Correct the violation of a Federal Right. See 18 U.S.C.N. 3626 (b)(2)(3).

Petitioner, prior to coming to the Court in seeking relief, brought Administrative Remedies proceedings to seek relief. In the relief, Petitioner sought a quiet room in which he and his associates could conduct research and being also an associate with "legs" to obtain the requested materials. This was not even addressed in the reply. (See Copy attached hereto).

Herein, Petitioner Submits The
Following Recovery Plan That Will
Satisfy The Sixth Amendment

1. That access to the Law Library be provided to 20% of the inmate population with 10% of the space being set forth to handicap inmates as dictated by the Space Requirements consistent with the ADA.

2. With the providing of current memory capable electric typewriters with "spell check" (Adler-Royal Satellite 80s): or provide a computer system with "works"; printer and paper too shall be provided, the provisions to type and print shall accomodate 20% of the inmate population.

2(a) As another alternative, inmates could be allowed to purchase their own typewriters through the commissary (with the understanding that the typewriters are not transferable upon a transfer) and use the typewriters in the assigned housing Units.

3. That the televisions and CD Players be removed from the library and re-located in "N" Building, where a whole wall of space and room are available.

4. That the noise level be decreased and the rap music not played so for all to hear.

5. That Staff members attend sensitivity classes regarding handicapped inmates.

6. That a suitable Sill Plate be installed below the first entry door to the Educational Building.

7. The the Educational Building doors be reduced to 5 foot pounds and widened to become legally consistent to the provisions of the ADA.

8. That four (4) additional bathrooms be installed in the Educational Building, currently only one(1) bathroom of which

your Petitioner must await in excess of one (1) hour to use at times. One bathroom is not enough for all the inmates that are in the Educational Building.

### RELIEF REQUESTED

A. Petitioner must urgently and respectfully seek a Preliminary Injunction to the Issues as discussed herein.

B. Petitioner seeks reasonable attorneys fees, the costs of reproduction and mailing to be provided by the named defendant.

Respectfully submitted,

Donald Blizzard, Sr.
No. 34258-037
FMC Devens
P.O. Box 879
Ayer, MA 01432

Copy to: David L. Winn
        Warden
        FMC Devens
        P.O. Box 880
        Ayer, MA 01432