IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Donald F. BLIZZARD Sr. )
    appearing as a friend of )
    the court on behalf of )
Tom RAJKUMAR )
    Petitioner )
    Pro-Se ) No. _____
     )
vs )
     ) 04-40164-RCL
United States of America )
    Respondent, et al )

## MOTION FOR HOME CONFINEMENT
## DUE TO SERIOUS MEDICAL ILLNESS

AND NOW, appearing before the Court is **Donald F. BLIZZARD, Sr.** (BLIZZARD) as a friend of the Court on behalf of **Tom RAJKUMAR**.

Petitioner presents the below and ongoing factual assertions to support this motion now before the Court.

### -A-
### JURISDICTION

The Court enjoys jurisdiction as found at **Title 28 USC 2241**, in concert to **United States Sentencing Guidelines (U.S.S.G.)**, **Title 18 U.S.S.G. 5H1.4**.

### -B-
### AS A FRIEND OF THE COURT

Donald F. BLIZZARD, Sr., (BLIZZARD) prays to be permitted to present Petitioner's claims to the Court for the following

reasons, as a "friend of the Court".

1. **Tom RAJKUMAR** has become totally disabled due to at least eight strokes, which have rendered him wheelchair-bound, devoid of verbal communication skills and even to attend to his most minimal daily needs.

2. **Donald BLIZZZARD**, since February of 2004, has availed himself to Tom, via his companion to file forms for his impending release, Requests to Staff, Social Security matters and, but not limited to "common letters".

3. **BLIZZARD** has been in contact with Tom's immediate family, by both phone and letter, whereupon the family desires the relief now prayed for.

4. A wealth of time and consideration, upon Tom's family, was dedicated to perhaps retaining counsel to remove to FMC Devens, and bring this matter to the Court. The decision to move the Court in pro-se to hear this matter turned upon the issue that, with Tom being unable to speak, move, etc., it would be most difficult, and would further cause time stress which could serve to initiate yet another stroke.

5. **Donald BLIZZARD** is not an attorney, nor is he trained in the law or application thereof; however, he, in researching this matter in the somewhat limited FMC Law Library, has determined and, hopefully, correctly so, that many like matters (**18 USC, U.S.S.G 5H4.1**) brought before this

Court and other Circuits were misguided, and merit less in that they failed to present medical issues of terminal nature.

6. **Donald BLIZZARD**, on behalf of the Petitioner, will present, demonstrated by medical documentation that Petitioner is in a near complete immobile state, is terminal and that Physical therapy endeavors have now proven futile. As recent as July 16, 2004, the therapist stated (very caring and respectfully), "Your getting much worse, Tom".

7. **Donald BLIZZARD**, by this motion, will evidence the Court that Petitioner's projected release date being August 16, 2005, he should now, due to terminal medical concerns, be permitted to conclude his sentence on house arrest with home care[a].

### ACTS LEADING TO IMPRISONMENT

Mr. **RAJKUMAR** was convicted of "receiving and possessing stolen securities (count 5 of the indictment) in the now matter of **United States vs Rajkumar**, No. CR-95-947 (ARR)

As a result, Mr. **RAJKUMAR** was sentenced to twenty-four (24) months imprisonment followed by three (3) years probation.

Due to a series of eight (8) strokes, Mr. **RAJKUMAR** did not

---

(a) FMC Devens may find, and correctly so, that the Petitioner "refused" two (2) trips to an outside hospital for treatment. This is due, non-understandable, to medical staff that Tom suffers from Spastic Bowel Syndrome and was in fear of fecal accidents in the vehicle used to transport.

surrender for service of sentence until January 27, 2004. With projected good time expected, **18 USC 3621**, Tom should finalize his service of sentence on or about November 18, 2005, with a community placement statutory projected for August 16, 2005. Petitioner was sentenced "aggregate Group 800/SRA/UCCLEA Non-viol. Lastly, there is $333,469.30 restitution ordered upon release.

### MAJOR LIFE CONCERNS OF MR.RAJKUMAR

Petitioner suffers from:

    a.   Diabetes

    b.   Melivetus

    c.   Hypertension

    d.   Hypercholes tarclemia

    e.   Depression

    f.   Chronic Renal Insufficiency

    g.   Eight (8) Cerebral Vascular events, secondary to an intrinsic blood clotting disorder. (Antiphospholipid and body syndrome making him hyperconguable)

### CURRENT MEDICATIONS

    a.   70/30 and NPH Insulin

    b.   Pravachol

    c.   Plavix

    d.   Celena

    e.   Lisin Opril

    f.   Aciphex

**Mr. RAJKUMAR** is cared for, as per 24-hours daily by an inmate companion. The companion resides in Tom's hospital room, and

attends to all his needs as presented. This index, "The Companion Program".

-C-
## THE COMPANION PROGRAM

The Federal Medical Center at Devns provides a companion to an inmate such as Petitioner. Here, Petitioner's companion is housed in he same two-man hospital room, as Petitioner clear definition of companion is self-serving, the very word itself. **Rocky (true name) NAVVARO** is assigned Petitioner. His last duty of the day will complement his first duty of the following day. He'll review the call-out sheet, posted in the hospital. If Tom as any appointments, he is to ensure his presence in a prompt and proper manner throughout the day.

Here, the Petitioner is a total care matter, where, comparing to the community, would be styled as a hospice. Tom, in having multiple strokes must be showered, shaved, his most personal hygiene matters attended to and being most importantly, fed.

Tom cannot eat any "actual" prison food. Rocky reduces all of his food to strained in context, all without the benefit of a blender or any other mechanical kitchen items. Simply put, this entire process is done several times per day, in so that Tom can be carefully and slowly be fed.

It will become clearly evidenced that Tom, too, has lost the use of the muscles that permit a person to swallow. Being fed by his companion is because he cannot use his hands or arms with even a minimal degree of strength and dexterity, to reach his mouth.

-5-

Rocky cleans Tom's room, washes and dries all of clothing and performs for him, every minimal task that a person must do on a daily basis, representative of a standard of life, combing his hair, tying shoes, brushing his teeth, to name but a few.

On occasion, upon a clear and mild day, Tom is taken to the yard to take a bit of fresh air. He, in being unable to talk, has developed a language rapport with his companion, although verbally he gets his "point across" in usual matters such as hungry, must shower, etc. It is, however, regretful that, if any serious situations arose, such as a pain in a particular body part, etc., he would not be understandable, nor in a like medical emergency, he will be again put at risk due to his non-communicational situation.

There, too, is a very high probability that his companion will soon be leaving FMC Devens[1]. Tom is extremely fearful of being without a competent person to care for him, in that, as aforementioned, he requires full and continual care.

### MR. RAJKUMAR'S LOSS OF MOTOR SKILLS

Mr. RAJKUMAR's strokes have left him wheelchair bound. On occasion (a good day), he can use the toilet with assistance, however, he must be wheeled to the toilet, be seated upon same, then disengaged. Tom frequently suffers from incontinence when he is

---

1. Two weeks prior, in an reorganizational move, Tom was moved to the second floor of the hospital, without his companion. Tom's already fragile condition quickly deteriorated. He was returned to Mr. NAVVARO's care.

unable to remove to the bathroom in a timely manner.

Tom can eat, with assistance, after the food is "hand blended" to the consistency of "baby food". His motor deficits in his arms pronounce limited mobility in terms of lifting the food to his mouth by the holding of a utensil.

Tom must be dressed and undressed and, too, cannot provide fine motor tasks such as buttoning, zippering, shoe tying, combing hair, etc.

Petitioner, due to the strokes is unable to speak, additionally his loss of motor skills prevent writing in order to communicate[2].

### MR. RAJKUMAR'S HOME CARE

Tom is a patient of Dr. **Catherine RAHILLY**, who practices from the Mount Sinai hospital, New York, under "Internal Medicine Associates" (Tel: 212/824-7636).

At residence, **Mr. RAJKUMAR** will be provided a home health aide service for eight (8) to sixteen (16) hours per day, seven (7) days per week.

Care for the remainder of the night is entered into by Petitioner's wife, **Parbattie RAJKUMAR** (22-11 92nd Street, East Elmhurst New York 11369 (Tel: 718/335-4579).

---

[2] On Saturday, August 7, 2004, Petitioner suffered a brain seizure. The attending nurse (no doctor was seen) after taking blood pressure and temperature, returned him to his unit. On Monday, August 9, 2004, Petitioner again was taken to the clinic in still being in seizure, double vision, weakness, dizziness was viewed by Dr. NEWLAND, who, with no examination, was again returned to his unit, i.e., no testing MRI, etc. The seizure continues, untreated, a very dangerous condition that could cause, regretfully, death, if possible infractions.

## PROVISION OF INCOME

Tom has been a businessman for over forty (40) years. His long-time business is "Lenox Liquors, Inc." located at 312 Lenox Avenue, New York, NY.

Currently, **Mrs. RAJKUMAR** is in supervision of the business (see letter attached hereto in "exhibits").

## FAMILY RESIDENCE

Tom and his wife reside at 22-11 92nd Street, East Elmhurst, New York. The residence's mortgage is cared for $3,000.00 per month, by business income. The home is valued at well over five-hundred-thousand dollars (500,000.00).

The home easily accommodates all home nursing supplies and the medical personnel to provide care.

## WHY WRIT SHOULD BE GRANTED

"Physical condition" is not ordinarily relevant in determining whether a sentence should be outside of the heartland provided for by the guideline range, **U.S.S.G. 5H1.4**, <u>United States vs Rivera</u> 994 F.2d 942, 948 (1st Cir. 1993).

Nevertheless, here a reduction of sentence to permit a short period of home detention until the service of sentence, **18 USC 3553**, ends in August of 2005, would serve to properly provide the intent of Congress in 5H1.4 matters, <u>United States vs Woodward</u>, 277 F.3d 87, 92-93 (1st Cir. 2002), which recognized the authority of this Court to depart in the case of, as here, an extraordinary physical

impairment, when further imprisonment would only be styled to further threaten or shorten a Defendant's life, or instantly, when the Federal Bureau of Prisons would be unable to adequately meet the Defendant's medical needs. **See**: **United States vs LeBlanc**, 24 F.3d 340, 348-49 (1st Cir. 1994) (upholding the District Court's refusal to depart downward because there was no indication presented that Defendant's life would be threatened or shortened by virtue of being incarcerated).

The threshhold inquiry is, Can Tom meet the holdings asserted in **LeBlanc**, supra, or would the BOP find that they will be able to adequately accommodate **Mr. RAJKUMAR's** medical needs.

The BOP, in situations such as here, "compassionate release", always (emphasis added) take the position "Denied, chances of re-activism too great". As of late, at FMC Devens, this position was offered upon inmate **MORALES**, an elderly man who requires a heart transplant; and several inmates who suffer total kidney failure, being reduced to dialysis, whose only chance for survivial would be: (1) release; (2) enter a transplant waiting list; or (3) find their own donor.

Petitioner suggests that he can stand the test of **LeBlanc** as below presented.

**TREATMENT**

The norm will be for the United States Attorney to contact the Medical Director at the Northeast Regional Office at 2nd and Chestnut Streets, Philadelphia, and inquire "Can you care for **Tom RAJKUMAR**, Inmate Registration No. 28067-054?". The Regional Director will

-9-

phone Dr. **HOWARD** at FMC Devens, Clinical Director, and put forth the same inquiry. Dr. **HOWARD**, devoid of any examination of Tom, consultation with care providers or contacting Dr. **RAHILLY** at Mount Sinai Hospital will simply state "yes". The United States will argue that he does not require home confinement.

The very word "treatment" defines a path of conduct attentive to a need which will result in a change. Here, no treatment is available, only care, but lacking in individualized care that will be clearly found at home.

### PHYSICAL THERAPY

Petitioner has been the recipient of physical therapy at FMC Devens in attempts at supported standing, motor skills, etc. While the physical therapists are excellent and very caring people, at Devens, it will become equally true that, in the last week of July, Tom was told "your getting worse, Tom". Again, these are excellent therapists, and they've done all within their realm of expertise to treat Petitioner.

### THERAPY AT HOME

To the best of Petitioner's knowledge, information and belief, presently there is no home therapy available to gain proper motor skills; however, an intense pattern of communicational therapy could serve to recover limited speech.

### MEDICAL TESTIMONY

If this Court deems required, an evidentiary hearing, Petitioner's family will seek expert medical testimony from Dr. **RAHILLY** and

associates who, at Petitioner's expense, will provide either in Court, closed circuit, or video transmitted testimony which will determine, with medical certainty, that absence from prison will allow **Mr. RAJKUMAR** (1) intensive care; (2) prolong his life; (3) enhance the quality of life; (4) provide state of the art verbal therapy; and (4) promote mental well-being which leads to an increase in medical stability.

## QUALIFICATION OF THE WRIT

The United States District Court for Massachusetts has been the recipient of many requests for the extraordinary relief requested herein, **U.S.S.G. 5H1.4**, supra, which, due to seeking relief improperly, has found this Court to discourage departures based upon physical condition. **See**: **United States vs Rivera**, 994 F.2d 942, 948 (1st Cir. 1993).

Instantly, a Court may award relief when the multiple life-threatening medical conditions reach such a level where life will be shortened and home detention will provide a better and less costly plan of treatment.

In not applying a proper reading of **U.S.S.G. 5H1.4**, a volume of those seeking relief have been rejected. **See**: **United States vs Lujan**, 324 F.3d 27 (1st Cir. 2003), relief rejected where "only one kidney" was the foundation for absence from prison, in accord, **United States vs Woodward**, 277 F.3d 87 (1st Cir. 2002); **United States vs Carey** (quoted in Woodward, 1st Cir.), 895 F.2d 318, 324 (7th Cir. 1990), denied for minor physical difficulties **United States vs Hilton**, 946 F.2d 955 (1st Cir. 1991), denied when cal-

-11-

cinosen presented for relief, deemed "non-life threatening". **United States vs Anderson**, 260 F.Supp.2d 310 "Diabetes" is not grounds to support 5H1.4 request" (fully treatable in prison); **United States vs Mayes**, 332 F.3d 34 (1st Cir. 2003) "Drug addiction will not qualify for relief."

In this matter now before the Court, truly extraordinary circumstances exist. Not only has a wealth of medical certainty been provided via the attached exhibits, but also medical testimony will be offered by Petitioner's pre-incarceration association of internists.

Regretfully, this motion has been prepared and provided at a very serious time in the interruption of Petitioner's medical treatment. Petitioner has been denied treatment for a "brain seizure". This is at least the third such seizure, which, when properly treated, required many testing procedures, a variety of medications, and a prolonged hospital stay. Here, **Dr. NEWLAND** nearly ordered Petitioner "returned" to his unit. Full documentation of seizure(s) treatment, and what, as here, lack of treatment will cause (or has caused), will be offered an evidentiary hearing. **Fed.R.Cri.P. Rule 8**

Petitioner most urgently presents that the Court find it manifest that the Defendant's multi-illnesses, either singularly or in concert to another, meet the standards of 5H1.4 **(U.S.S.G.)** and warrants a departure to permit immediate home detention. First, there can be no question that **Tom RAJKUMAR's** physical condition is "exceptional", **Koons vs United States**, 518 U.S. at 95, 116 S.Ct. 2035, and that he is "seriously infirm", **U.S.S.G. 5H1.4**, unlike diabetes,

"only one kidney" and an "dependance upon illegal narcotics" that do not meet the test of 5H1.4, supra.  Second, **Tom RAJKUMAR's** condition seriously erodes his capacity to threaten society.  While the Government may argue, prior to an evidentiary hearing, that **RAJKUMAR** has failed to produce "a physician's evaluation indicating that his illnesses have impaired either his ability or his desire to engage in further criminal conduct".  Such affirment by a verbal indication or letter would not be a matter of medical expertise -- such as the diagnosis and description of symptoms -- but of legal judgement by this Court.

After even, prior to medical testimony, a review of the record, the Court will find it hard to imagine **Tom RAJKUMAR** committing burglary, for example, or any crime of violence³ in his present condition.

It's submitted that there would be no basis in law for such a Government contention.

First, the specific language of 5H1.4 not only fails to mention any such limitations, but appears to expressly reject it.  The only example given in the Guidelines of circumstances in which a physical impairment would justify a departure is not one in which a prisoner's health would be threatened by the inability of prison authorities to provide adequate health care, but instead, suggest a completely different rationale.  The example instructs that departure would be warranted because "in the case of a seriously infirm defendant, home detention will be as efficient as, and less costly than, imprisonment, **U.S.S.G.5H1.4**.

---

3    Petitioner has been never encouraged in any type of violence, be it crime or other indication.

This Court has found correctly that, when, as here, an extremely infirm defendant is so incapacitated that the ordinary purpose of incapacitation and deterrence of recidivism do not justify the expense of extended incarceration, some lesser degree of punishment is permissible and, indeed, specifically authorized by the sentencing commission, **Koons**, supra 5K2.0. **Please see**: **United States vs Martin,** 363 F.3d 25 (1st Cir. 2004).

### CONCLUSION

Petitioner seeks, pursuant to a review of this motion, the medical files and medical testimony to be offered at no cost to the United States upon entering into an evidentiary hearing, an order issued upon the United States permitting **Tom RAJKUMAR** absence from prison, to home detention and care.

Respectfully Submitted,

_____
Tom RAJKUMAR

_____
Donald F. BUZZARD, Sr.
(as a friend of the court)

## UNSWORN VERIFICATION

**Tom RAJKUMAR**, with friend of the Court **Donald BLIZZARD** depose that all of the statements presented herein are subject to **28 USC 1746**, true and correct to the best of their combined information, knowledge, and belief.

Respectfully Submitted,

*[signature]*

Tom RAJKUMAR
Reg. NO. 28067-054
FMC Devens
P.O. Box 879
Ayer, MA  01432

*[signature]*

Donald F. BLIZZARD, Sr.
Reg. No. 34258-037
FMC Devens
P.O. Box 879
Ayer, MA  01432